IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| BRIAN MICHAEL ROSSA, the Personal Representative of the Estate of Angelica Elaina Philbee, | Case No. 6:25-cv-01622-AP |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| THE STATE OF OREGON, by and through the Oregon Health Authority; and by and through the Oregon State Hospital *et al.*, | |
| Defendants. | |

POTTER, United States Magistrate Judge:

Plaintiff Brian Michael Rossa (Plaintiff) brings this case on behalf of the Estate of Angelica Elaina Philbee for violations of Philbee's civil rights based on an attack that occurred when Philbee was a patient at the Oregon State Hospital (OSH). Plaintiff has sued not only the State of Oregon but also Kupplin Worldwide, LLC (Kupplin) and Amergis Healthcare Staffing[1] (Amergis). Kupplin and Amergis both provided staffing for the OSH. Defendants Kupplin and Amergis now move to dismiss the claims against them under Fed. R. Civ. P. 12(b)(6). For the

---

[1] Amergis was formerly known as Maxim Healthcare Staffing Services, Inc. Plaintiff named both Amergis and Maxim as defendants in this case, however, only Amergis exists now. *See Abbott Bldg. Corp., Inc. v. Fed. Sav. & Loan Ins. Corp.*, 739 F. Supp. 532, 537 (D. Nev. 1990) (holding that "a change of corporate name does not change the identity of a corporation, nor does it affect the corporation's rights, properties, or liabilities"). As the company refers to itself as Amergis in its briefing, the Court will do the same.

PAGE 1 – OPINION AND ORDER

reasons explained below, Defendants' motions are GRANTED, and Plaintiff's complaint as to Kupplin and Amergis is DISMISSED without prejudice and with leave to amend.[2]

## BACKGROUND

According to Plaintiff's Complaint, in February 2024, Angelica Elaina Philbee was confined at OSH and in the legal custody of the State of Oregon. Compl. ¶ 28. OSH is a secure in-patient psychiatric hospital operated by the Oregon Health Authority (OHA). Compl. ¶ 4. OSH houses people with severe psychiatric issues including those who have been convicted of crimes and those who have been involuntarily committed. Comp. ¶ 19. By law, OSH is responsible for administering, managing, and supervising the housing units and providing reasonable security for patients. Compl. ¶¶ 19-24. Defendants Kupplin and Amergis provided nursing and mental health staff for OSH pursuant to contracts with the State of Oregon. Compl. ¶¶ 6, 7. This included providing nurses, mental health therapy technicians, and mental health security technicians. Compl. ¶ 27.

Philbee was residing in a co-ed housing unit referred to as AN1. Compl. ¶ 29. During that time, Shaun Bergeron was also a patient at OSH. Compl. ¶ 21. Bergeron was placed in seclusion on February 7, 2024, due to threats against staff and other inmates, but two days later, was transferred to housing unit AN1. Compl. ¶¶ 31-34. On or about February 9, 2024, Philbee requested a transfer to a different housing area because she was concerned about her safety.

---

[2] Because this Court is granting Plaintiff leave to amend, this is a non-dispositive matter. *See McKeever v. Block,* 932 F.2d 795, 798 (9th Cir.1991). As such, this decision is an order as opposed to a findings and recommendation. *See* Fed. R. Civ. P. 72(a); *Gillette v. Malheur Cnty.,* No. 2:14-cv-01542-SU, 2015 WL 2365405, at *1 n.1 (D. Or. May 15, 2015); *cf. Dillon v. Legacy Health,* No. 3:24-cv-01187-SB, 2025 WL 1201757, at *1 n.2 (D. Or. Apr. 24, 2025) (noting that granting motion for leave to amend is non-dispositive and citing cases).

Compl. ¶ 35. This resulted in an "observation order" that required staff to observe her in case there was a threat to her safety. *Id.*

On February 10, Philbee was sitting in a partially enclosed courtyard within AN1 when Bergeron attacked her, choking her until she lost consciousness and then throwing her to the ground. Compl. ¶ 41. Another patient discovered Philbee on the ground barely conscious and bleeding from a wound on her forehead and called for help. Compl. ¶ 42. Staff arrived and Philbee was ultimately transferred to the Salem Hospital where she was treated for her injuries. Compl. ¶¶ 43, 44, 45. Philbee suffered a concussion and as a result of the attack, suffered from "scarring to her forehead, vision impairment, constant nausea, vomiting, headaches, chronic sleeplessness, terror, fear, frustration, confusion, hopelessness and despair, physical pain and suffering, embarrassment and humiliation, and a loss of trust in inpatient mental health facilities, their staff, and others." Compl. ¶ 45. Some of the injuries persisted until she passed away in March 2025.[3] *Id.* According to the Complaint, at the time of Philbee's injuries, staff failed to adequately monitor and supervise the unit which resulted in patients in AN1, like Philbee, to be left unsupervised, which created an unreasonable risk of harm. Compl. ¶ 38.

Plaintiff now brings several claims on behalf of Philbee's estate against the State of Oregon and individual defendants (including Doe defendants) as well as defendants Kupplin and Amergis. The following claims are alleged against defendants Kupplin and Amergis:

Count Two: Violation of the Eighth and Fourteenth Amendment (the *Monell* claim)

Count Three: Violation of the Eighth and Fourteenth Amendments – Supervisor Liability

Count Five: Negligence under ORS § 30.075

---

[3] Philbee passed away on March 23, 2025. Compl. ¶ 3. Plaintiff is not alleging that the attack caused Philbee's death and is not bringing a wrongful death claim. Declaration of N. Hoffman in Support of Motion to Dismiss ¶ 3, ECF No. 41.

PAGE 3 – OPINION AND ORDER

Count Six: Abuse of a Vulnerable Person under ORS §§ 124.100-124.105. Defendants Kupplin and Amergis move to dismiss all claims against them for failure to state a claim.

## STANDARD OF REVIEW

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it fails to state a claim upon which relief can be granted. In reviewing a Rule 12(b)(6) motion to dismiss, the court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged must constitute "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Although the court must take the allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Twombly*, 550 U.S. at 555). If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain three things: "(1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)-(3). "Shotgun" pleadings are one type of pleading that

violate Rule 8 and are subject to dismissal under Rule 12(b)(6) for failure to state a claim. *See Gibson v. City of Portland*, No. 24-1663, 2026 WL 235118, at *17-18 (9th Cir. Jan. 29, 2026) (holding that district courts do not have to accept shotgun pleadings and noting that "the problem with shotgun pleadings is that they make it difficult, if not impossible, for the opposing party to formulate a response").

"Pleadings that seek to overwhelm defendants with an unclear mass of allegations and make it difficult to impossible for the defendants to make informed responses to the plaintiff's allegations are considered 'shotgun' pleadings.'" *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 943 (D. Or. 2020) (citing *Autobidmaster, LLC v. Alpine Auto Gallery, LLC*, No. 3:14-cv-1083-AC, 2015 WL 2381611, at *15 (D. Or. May 19, 2015)). So too "is a complaint that asserts claims against 'multiple defendants without specifying which of the defendants are responsible for which acts or omissions.'" *Id.* (quoting *Nissen v. Lindquist*, No. C16-5093 BHS, 2017 WL 26843, at *2 (W.D. Wash. Jan. 3, 2017)). And a complaint may be a "'shotgun' pleading if it fails to connect its factual allegations to the elements comprising plaintiff's claims such that it denies the parties adequate notice of the allegations supporting each cause of action." *Id.* (citations omitted).

## DISCUSSION

### I. Plaintiff Fails to Allege a *Monell* Claim Against Kupplin and Amergis

Plaintiff first alleges *Monell*—or municipal liability—claims against Kupplin and Amergis for violations of Philbee's civil rights under 42 U.S.C. § 1983. Compl. ¶¶ 61-67. Although § 1983 typically only permits causes of actions against individuals, in some situations, a municipality maybe liable as a "person" under the statute. *Monell v. Dep't of Soc. Serv. of City of New York.*, 436 U.S. 658, 690-91 (1978). To bring a claim for *Monell* liability, a plaintiff must

plead facts alleging that (1) she had a constitutional right of which she was deprived; (2) the municipality had a policy or custom; (3) the policy or custom amounted to deliberate indifference to her constitutional rights; and (4) the policy or custom was the "moving force behind the constitutional violation." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)); *Monell,* 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

Kupplin and Amergis are private entities who were, according to Plaintiff, at all times acting under color of state law. Plaintiff alleges that Kupplin and Amergis were providing essential government services to OSH. Compl. ¶ 62. For purposes of the motion to dismiss, neither Kupplin nor Amergis are disputing that characterization. Kupplin MTD at p. 5; Amergis MTD at p. 8. Private entities acting under color of state law are subject to liability under *Monell*. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012).

### A. Deprivation of Philbee's Constitutional Rights

As to the first *Monell* factor, Plaintiff alleges violations of Philbee's Eighth and Fourteenth Amendment rights. Compl. ¶¶ 43, 45, 65, 70. "Involuntarily committed patients in state mental health hospitals have a Fourteenth Amendment due process right to be provided safe conditions by the hospital administrators." *Ammons v. Washington Dep't of Soc. & Health Servs.*, 648 F.3d 1020, 1027 (9th Cir. 2011); *see also Est. of Conners by Meredith v. O'Connor*, 846 F.2d 1205, 1209 (9th Cir. 1988) (affirming denial of qualified immunity in § 1983 case where patient at the State hospital was killed by another patient when a question of fact existed as to whether defendants were "indifferent to patient safety"). In this context, the question is

"whether [] conduct diverges from that of a reasonable professional." *Ammons*, 648 F.3d at 1027 (citing *Youngberg v. Romeo,* 457 U.S. 307 (1982)). Here, Plaintiff has alleged that the various defendants were deliberately indifferent to and disregarded her safety; at this stage that is sufficient to allege a violation of Philbee's rights under the Fourteenth Amendment.[4]

### B. Plaintiff fails to plausibly allege Kupplin or Amergis had a policy or custom

As to the second factor, a Plaintiff can "satisfy *Monell's* policy requirement in one of three ways." *Gordon*, 6 F.4th at 973. First, a plaintiff can show municipal liability where a public body's unconstitutional actions are "'pursuant to an expressly adopted official policy.'" *Id*. (quoting *Thomas v. Cnty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014)). Second, a plaintiff can demonstrate liability where a public body has a "longstanding practice or custom" leading to constitutional violations. *Id*. Third, a plaintiff can demonstrate liability where an "individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id*. (quoting *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010)). When relying on a policy to establish *Monell* liability, that policy must be "a 'deliberate choice to follow a course of action'" that an official or officials makes based on various alternatives. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016)).

---

[4] While Plaintiff can make out a Fourteenth Amendment claim in certain circumstances, the Eight Amendment does not apply in most scenarios involving the involuntarily committed. *See Youngberg,* 457 U.S. at 325 (holding the Fourteenth Amendment, rather than the Eighth Amendment, was the appropriate standard under which to evaluate the constitutional rights of individuals who are involuntarily committed); *see also Mitchell v. Washington,* 818 F.3d 436, 443 (9th Cir. 2016) (describing the standard for evaluating Fourteenth Amendment claims and distinguishing it from the Eighth Amendment standard which applies to persons who have been convicted and raise challenges to their conditions of confinement).

Plaintiff alleges Defendants' *Monell* liability arises from policies Defendants maintained while contracting with the State of Oregon and OSH. Compl. ¶ 62. These polices include: (1) "relying on staff not adequately trained to identify, monitor, and observe patients who pose a substantial risk of harm to other patients at the OSH"; (2) "disregarding directives requiring patients . . . to be closely monitored or have enhanced supervision"; (3) "permitting staff to remain unwilling to minimize the substantial risk that other patients posed, which put patients in harm's way"; (4) "hiring personnel indifferent to the needs of patients confined in the OSH"; (5) "relying on video cameras to monitor patients rather than interacting with patients and monitoring patients by personal observation"; (6) "staff gathering and remaining in the nursing station in the milieu rather than performing assigned tasks"; and (7) "ignoring patients' mental health or medical needs by not disciplining staff for violating the policies and practices of the OSH." Compl. ¶ 63. According to Plaintiff, the alleged policies posed a substantial risk of harm to Philbee and other OSH patients, and Defendants were aware of these risks. Compl. ¶ 64.

While Plaintiff's Complaint contains allegations of multiple failures that he contends resulted in the incident, he fails to identify any official policy expressly adopted by either Defendant. In fact, the policies identified in the Complaint are purely speculative. Plaintiff concedes as much in replying to both Defendants' motions to dismiss. *See* Pl.'s Resp. to Maxim & Amergis [Pl.'s Resp. to Amergis] 8, ECF No. 28; Pl.'s Resp. to Kupplin 18, ECF No. 49.

Plaintiff also fails to identify any longstanding custom or practice by either Defendant. In response to each Defendant's motion, Plaintiff attempts to connect a custom or practice to the policy allegations made in the Complaint. But, in the end, Plaintiff merely restates each of the proffered seven policy theories identified in the Complaint, followed by a conclusory statement that each practice is "well-settled" or "well-established" or a "conscious policy." Pl.'s Resp. to

PAGE 8 – OPINION AND ORDER

Amergis 9-12; Pl.'s Resp. to Kupplin 19-22. The trouble with Plaintiff's custom or practice allegations is that Plaintiff can only point to a single incident to support the idea that any such policies and practices exist—the incident which involved Philbee and Bergeron. And "generally, a single instance of unlawful conduct is insufficient to state a claim for municipal liability under section 1983." *Benavidez*, 993 F.3d at 1154. Even construing Plaintiff's Complaint liberally in his favor, a mere statement that a single incident[5] is evidence of a custom or practice is not sufficient to survive a motion to dismiss.

Plaintiff also fails to identify any official with final policy-making authority who ratified a subordinate's unconstitutional decision or action. In fact, Plaintiff fails to identify any employee of Kupplin or Amergis at any point in the Complaint. Instead, Plaintiff refers only to the corporate entities or to "staff" and "employees." Pl.'s Resp. to Amergis 9-12; Pl.'s Resp. to Kupplin 19-22. And although Plaintiff argues that the single incident between Philbee and Bergeron is evidence that each Defendant "ratified the policy of staff inaction," Plaintiff fails to identify who at each company allegedly ratified the alleged policies. Pl.'s Resp. to Amergis 12; Pl.'s Resp. to Kupplin 22. Such claims are far too tenuous to meet the requirements for *Monell* liability. These claims must be dismissed. Nevertheless, the Court will continue the inquiry, in the event that Plaintiff chooses to amend his Complaint.

---

[5] In fact, a single incident may trigger liability only where "'fault and causation'" can be clearly traced to an authorized decisionmaker. *Benavidez*, 993 F.3d at 1154 (citing *Bd. Of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 405 (1997)). Where fault and causation of a single incident can be clearly traced to a municipality's unconstitutional policy, a Plaintiff can sufficiently "establish that the municipality itself was liable for the [] constitutional injury." *Bd. Of Cnty. Comm'rs of Bryan Cnty., Okla.*, 520 U.S. at 406. But as discussed above, Plaintiff fails to identify any unconstitutional policy or decision that clearly establishes the fault and causation behind the incident between Philbee and Bergeron.

### C. Plaintiff cannot show deliberate indifference on failure-to-train theory

Plaintiff attempts to show Defendants were deliberately indifferent to Philbee's civil rights by claiming Kupplin and Amergis failed to adequately train staff to "identify, monitor, and observe patients who pose a substantial risk of harm to other patients." Compl. ¶ 63. "Deliberate indifference is a high legal standard 'requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Perez v. City of Fresno*, 98 F.4th 919, 931 (9th Cir. 2024) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla.*, 520 U.S. at 410)). Plaintiff has failed to offer any evidence that the single incident between Philbee and Bergeron was the result of deliberate indifference. Although "deliberate indifference can be inferred from a single incident when 'the unconstitutional consequences of failing to train' are 'patently obvious,' an inadequate training policy itself cannot be inferred from a single incident." *Hyde v. City of Willcox*, 23 F.4th 863, 874–75 (9th Cir. 2022) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "Otherwise, a plaintiff could effectively shoehorn any single incident with no other facts into a failure-to-train claim against the supervisors and the municipality." *Id*. Plaintiff has failed to identify any facts to suggest that the training here was inadequate. The Court declines to conclude that a pattern of inadequate training exists based on a single data point.

### D. Plaintiff cannot show a moving force from a policy, custom, or practice

Plaintiff alleges that Defendants' policies, customs, or practices were "the moving forces" resulting in the deprivation of Philbee's civil rights. Compl. ¶ 63. But, as discussed at length above, Plaintiff has failed to identify any policy, custom, or practice under any theory permitted to support a civil rights claim implicating *Monell* liability. In essence, Plaintiff's Complaint boils down to an allegation that because Philbee was not protected from the attack, that must mean that Kupplin and Amergis—regardless of whether their employees were actually

involved in the incident—hired personnel who did not perform their jobs adequately, relied on personnel they failed to train, and allowed personnel to ignore patients and perform their jobs poorly. This is not sufficient.

This incident could very well have resulted in part from a failure on the part of one of Defendants' employees. However, absent a pattern of incidents, there is simply no evidence of a custom or practice, as opposed to other shortcomings, on behalf of an employee or employees of Defendants. *Benavidez*, 993 F.3d at 1154. Accordingly, Plaintiff's *Monell* claims are dismissed with leave to amend as to both Kupplin and Amergis.

## II. Plaintiff Cannot Bring a Claim for Supervisor Liability

Plaintiff also brings a claim for "supervisor liability" against several individuals (including John Does) along with Kupplin and Amergis. Compl. ¶¶ 68-72. Kupplin and Amergis move to dismiss because as corporations they are not subject to liability under a theory of supervisor liability.

"Supervisory liability is imposed against a supervisory official in his individual capacity." *Larez v. City of Los Angeles,* 946 F.2d 630, 646 (9th Cir.1991). But supervisors "are not liable for actions of subordinates on any theory of vicarious liability"; the supervisor must be personally involved in the constitutional violation or there must be a causal connection between their wrongful conduct and the constitutional violation. *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). The problem for Plaintiff is Kupplin and Amergis are not individuals. And the Complaint fails to identify anyone from either Kupplin or Amergis that acted in a supervisory capacity. Instead, the Complaint simply recites that certain individual defendants along with "Kupplin, and [Amergis] were supervisors of OSH employees or agents, actual or implied, on February 10, 2024" and that they "failed to adequately and constitutionally train and supervise

PAGE 11 – OPINION AND ORDER

the subordinate staff." Compl. ¶ 69. This is not sufficient.[6] Plaintiff must identify individuals—not companies—that served as supervisors.

To the extent Plaintiff indicates that he needs discovery to identify any supervisors from Kupplin or Amergis, that is not a reason to allow this claim to proceed against the corporations. Plaintiff has identified and brought claims against the OSH superintendent, the OSH security manager, the OSH Nurse manager, the OSH unit administrator, and the lead registered nurse as well as several John Doe defendants. Discovery related to these individuals will presumably identify any additional supervisors whether they are employed by OSH or Kupplin or Amergis. Plaintiff can amend to add those individuals.

### III. Plaintiff's State-law Claims are Insufficient

Plaintiff also brings state tort claims against Kupplin and Amergis for negligence and abuse of a vulnerable person. ORS §§ 30.075, 124.100-124.105. Defendants move to dismiss these claims as well.

#### A. Plaintiff's OTCA Notice

Kupplin and Amergis move to dismiss for failure to comply with the notice requirements of the Oregon Tort Claims Act (OTCA). The OTCA requires a plaintiff to provide notice of potential tort claims to the State. It instructs that "[i]f the claim is against the state or an officer, employee or agent thereof," the plaintiff must provide notice "to the office of the Director of the

---

[6] Plaintiff relies on a single unpublished district court case to support the theory that a company can be held liable under a theory of supervisor liability. *See Derby for Derby v. Columbia Cnty.*, No. 3:21-cv-1030-HL, 2022 WL 18027807, at *4, 8-10 (D. Or. November 14, 2022), *report and recommendation adopted*, 2022 WL 18025225 (D. Or. December 30, 2022). In that case, it does not appear that the defendant challenged the sufficiency of the plaintiff's supervisor liability claim on the basis that it was not an individual. And the Opinion itself treats the claim as one arising under *Monell* and declines to dismiss because the defendant "fail[ed] to address whether Plaintiff has sufficiently alleged that [its] policies, customs, or practices resulted in the injury to [Plaintiff]." *Id.*

PAGE 12 – OPINION AND ORDER

Oregon Department of Administrative Services." ORS § 30.275. In the Complaint, Plaintiff alleges he provided notice to the State of Oregon as required. Compl. ¶ 83 ("Notice pursuant to the Oregon Tort Claims Act was given to Defendant State of Oregon within the time prescribed by law.").

Kupplin and Amergis contend that they were entitled to separate notice. But the statute does not appear to support that reading. When the tort claim is against "the state or an officer, employee or agent thereof," a plaintiff is required to give notice to "the office of the Director of the Oregon Department of Administrative Services." ORS § 30.275(5)(a). If Kupplin and Amergis are simply private corporations, they are not entitled to notice under the OTCA. If Kupplin and Amergis are agents of the State for purposes of this lawsuit, then it appears that notice to the State of Oregon is sufficient. *See Battles v. Dep't. of Corr.*, No. 2:19-CV-01727-AC, 2020 WL 5351656, at *3 (D. Or. July 7, 2020), *report and recommendation adopted*, 2020 WL 5351033 (D. Or. Sept. 4, 2020) (concluding it was not clear that plaintiff failed to provide notice to community college because community college was arm of the state and "[u]nder Or. Rev. Stat. § 30.275(5)(a) . . . if the claim is against 'the state or an officer, employee or agent thereof,' notice shall be given to 'the office of the Director of the Oregon Department of Administrative Services.'"). But because Plaintiff provides little information about the form of his notice, it is difficult to discern if adequate notice was provided. If Plaintiff chooses to amend his Complaint, he should provide additional details regarding the notice provided.

### B. Plaintiff's state-law claims are not sufficiently pled

Plaintiff's state-law claims for negligence and abuse of a vulnerable person are not sufficiently pled to put Kupplin or Amergis on notice of the claims against them. Put another way, Plaintiff's state-law claims suffer from the same issues as his constitutional claims; his

Complaint contains only generic allegations of culpability with no factual support as to the wrongdoing of either Defendant.

> For an ordinary negligence claim, a plaintiff must allege sufficient facts to show
>
> (1) that the defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's an injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Moody v. Oregon Cmty. Credit Union*, 371 Or. 772, 784, 542 P.3d 24, 33 (2023) (quoting *Solberg v. Johnson*, 306 Or. 484, 490-91, 760 P.2d 867 (1988)). Thus, to survive a motion to dismiss a claim for negligence in Oregon, Plaintiff must at least allege facts showing that Defendants "'unreasonably created a foreseeable risk'" of the harm that befell Philbee. *Stone v. Witt*, 374 Or. 524, 533, 581 P.3d 919, 926 (2025) (citations omitted).[7]

Here, Plaintiff alleges "Defendants Oregon, Kupplin, and [Amergis], acting by and through their employees and agents were negligent . . ." but notably fails to specify which (if any) of Kupplin's or Amergis's employees were actually present on duty during the incident, let alone what roles those employees may have played or failed to play in that moment. Simply stating both companies contracted with Oregon to provide staff to OSH is hardly sufficient to identify what role that staff may have played in the attack on Philbee much less to establish the negligence of the two companies. While a Plaintiff need not connect every single alleged instance of misconduct in the complaint to the individual responsible, there must still be some level of specificity in the pleadings. *See Roberts v. Cnty. of Riverside*, No. 19-1877, 2020 WL

---

[7] In a concurring opinion in *Stone*, Justice Bushong expressed concern that the majority opinion created confusion by requiring a plaintiff to plead that defendant created a risk as opposed to just alleging a reasonably foreseeable risk of harm. *Stone*, 374 Or. at 558-59 (Bushong, J. concurring). Plaintiff's complaint fails to sufficiently allege facts supporting either theory.

PAGE 14 – OPINION AND ORDER

3965027, at *4 (C.D. Cal. June 5, 2020) ("Typically, courts require that allegations be specific enough to place a defendant on notice of which allegations pertain to them and which allegations they must defend.")

In his Complaint, Plaintiff provides a list of general negligence allegations against the three Defendants, including "[f]ailing to monitor and supervise Bergeron to ensure Bergeron was not a danger to other patients"; "[f]ailing to recognize Bergeron posed a danger to other patients, including Philbee"; "[d]isregarding clear signs Bergeron posed a significant danger to other patients . . ."; "[d]isregarding Philbee's concerns that she did not feel safe being housed in AN1"; "[f]ailing to monitor Philbee to ensure that her reasonable safety was provided for"; "[m]onitoring patients by video rather than personal observation"; "[f]ailing to constantly personally interact with patients such as Philbee and Bergeron while they were being housed in AN1"; "[f]ailing to leave the nursing station in AN1 to perform their job duties"; "[p]ermitting staff to congregate at the nursing station in AN1 rather than performing their job duties"; "[f]ailing to properly train staff to monitor patients and/or provide for patients' reasonable safety"; "[f]ailing to properly supervise staff to ensure they were performing their job duties at AN1"; [d]isregarding policies, procedures, and protocols regarding patients who had articulated concerns about their safety"; "[d]isregarding policies, procedures, and protocols regarding patients who posed a known danger to others"; "[f]ailing to intervene when Bergeron attacked Philbee"; [f]ailing to provide Philbee with immediate medical assistance once she was attacked"; "[f]ailing to provide adequate safeguards and protections to protect patients such as Philbee from Bergeron"; "[f]ailing to inform Philbee that Bergeron was dangerous"; and "[f]ailing to ensure

PAGE 15 – OPINION AND ORDER

there was sufficient qualified staff at AN1 to provide for Philbee's and other patients' reasonable safety."[8] Compl. ¶ 81.

Such allegations are not specific enough as to which Defendant was responsible for what harm. *Potter v. Dark Horse Comics, Inc.*, No. 3:16-cv-02090-SB, 2017 WL 2642973, at *2 (D. Or. May 17, 2017), *report and recommendation adopted*, 2017 WL 2642276 (D. Or. June 16, 2017) (noting it is "well settled that a district 'court should dismiss a complaint that makes undifferentiated allegations against multiple defendants, because such a complaint fails to put each defendant on notice of the alleged wrongdoing.'" (quoting *Manukyan v. Cach, LLC*, No. 12–cv-08356, 2012 WL 6199938, at *3 (C.D. Cal. Dec. 11, 2012)). Moreover, it is unclear, based on these allegations, how either Kupplin or Amergis would know who was allowing contract staff to congregate at the nurses' station. Or which Defendant failed to constantly personally interact with patients. Or which Defendant failed to inform Philbee that Bergeron was dangerous. Providing a voluminous list of allegations does not insulate Plaintiff from his responsibility to support these allegations with some specificity as to which Defendant must answer for what act. *See Gibson*, 2026 WL 235118, at *20 (dismissing a complaint where multiple claims were alleged against multiple defendants without any specificity as to which defendants did what).

Plaintiff's claim for abuse of a vulnerable person is similarly deficient. To support a claim for abuse of a vulnerable person, Plaintiff must allege that a defendant "knowingly acted or failed to act under circumstances in which a reasonable person should have known that the same

---

[8] Plaintiff alleged two further claims of negligence specifically against the State of Oregon for failing to "ensure that the staff provided by Kupplin and/or [Amergis] were qualified and trained to perform their job duties in AN1" and "failing to ensure that Kupplin and/or [Amergis] provided adequate staff to provide for the reasonable safety of patients." Compl. ¶ 81.

sort of abuse of a vulnerable person that occurred [against Philbee] would, in fact, occur." *Wyers v. Am. Med. Response Nw., Inc.*, 360 Or. 211, 230, 377 P.3d 570, 581 (2016).

As an initial matter, Kupplin contends that Plaintiff fails to allege sufficient facts to conclude Philbee was a vulnerable person. A vulnerable person is an "incapacitated person" or "[a] person with a disability who is susceptible to force, threat, duress, coercion, persuasion or physical or emotional injury because of the person's physical or mental impairment." ORS § 124.100. The Complaint alleges that Philbee was confined at OSH, which houses people with severe psychiatric issues including those who have been convicted of crimes and who have been involuntarily committed. Comp. ¶ 19, 28. The core of Plaintiff's claim is that because of her status at OSH, Philbee was unable to separate herself from another dangerous patient and sought protection which was not provided. At the pleading stage, that is sufficient to allege Philbee was a vulnerable person. *Cf. Herring v. Am. Med. Response Nw., Inc.*, 255 Or. App. 315, 319, 297 P.3d 9, 13 (2013) (finding that at the time of the incident "plaintiff lacked the capacity to meet the essential requirements for her physical health and safety").

But the failure to differentiate between any Defendant for the acts of alleged wrongdoing is problematic. Here, again, the Complaint assigns responsibility for the claim to the State of Oregon, as well as Kupplin and [Amergis]. Compl. ¶ 85-90. But the claims against Kupplin and Amergis are simply that they supply employees to OSH, without any facts that their employees were involved in the incident. There are also no facts that either Kupplin or Amergis should have known of the potential abuse or that employees knew that such abuse was likely to occur. Plaintiff's lack of specificity is fatal to these claims and accordingly, they are dismissed.

In sum, Plaintiff's claims against Kupplin and Amergis are dismissed. However, as it is unclear whether the pleadings could be cured by amendment, Plaintiff's claims are dismissed

without prejudice and with leave to amend. *See Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (en banc) ("Leave to amend should be granted unless the pleading 'could not possibly be cured by the allegation of other facts.'" (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000))).

## CONCLUSION

The Court GRANTS both Defendants Kupplin's and Amergis's motions to dismiss Plaintiff's claims against them. Plaintiff has leave to amend his Complaint within 30 days of the date of this Order.

DATED this 11th day of February, 2026.

                                                    /s/Amy E. Potter
                                                    AMY E. POTTER
                                                    United States Magistrate Judge